UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

RAMSI A. WOODCOCK                                                    PLAINTIFF

v.                                                           No. 5:26-cv-262-BJB

GREGORY VAN TATENHOVE, ET AL.                                      DEFENDANTS

* * * * *

OPINION & ORDER DENYING REQUESTS FOR EXPEDITED DISCOVERY AND AN
EXPEDITED PRELIMINARY-INJUNCTION HEARING

Professor Ramsi Woodcock, currently suspended from his teaching duties at the University of Kentucky School of Law, has sued to block former U.S. District Judge Greg Van Tatenhove from serving as the law school's dean. In his view, hiring a judge rather than a tenured professor to lead the school precludes the law faculty from expressing to the outside world that their scholarship is the product of a peer-reviewed search for truth. Complaint ¶ 1. This abridges the faculty's collective right to associate around a shared message, Woodcock maintains, even though the University has not barred him or his colleagues from speaking out about the appointment or its effect on their work. ¶¶ 1–2. Nor do Woodcock's allegations (as clarified during a TRO hearing, *see* DN 15) suggest that the University has prevented the faculty from writing, submitting, or publishing articles or other scholarship—or indeed from imposing or threatening any sort of sanction if they do. *See* Supp. Br. (DN 18-1) at 5. Yet to avoid sending a message the faculty disapproves of, Woodcock has asked the federal court to override the University's appointment, bar Van Tatenhove from serving, and "appoint the Faculty Executive Committee … to the position of dean." Proposed Temporary Restraining Order (DN 2-1) at 2.

Woodcock filed his lawsuit against several University leaders, including Van Tatenhove, in his now-former jurisdiction—the Eastern District of Kentucky. But all of his judicial colleagues recused. So the Chief Judge of the Sixth Circuit reassigned this case outside the Eastern District of Kentucky on July 17. That same day, this Court issued a brief order skeptical of the need for accelerated litigation to avoid irreparable harm to whatever right to expressive association that Woodcock might establish on behalf of the faculty. DN 11. After Woodcock supplemented his motion for temporary emergency relief the following weekend, the Court held a hearing on Monday, July 20, denying the request for a temporary restraining order on three principal grounds:

1

1. Woodcock hadn't established his right to bring a freedom-of-association claim based on the putative message of the entire law-school faculty.

2. Assuming the law faculty is an expressive association properly represented by Woodcock, he failed to show that the faculty had collectively articulated any message associated with its scholarship that has been skewed by the hiring of a new dean.

3. Assuming such a collective message existed, Woodcock hadn't shown a likelihood that the appointment of a new dean had abridged the faculty's ability to express any such message regarding its scholarship or membership.

After the hearing, the Court ordered counsel to confer in good faith regarding the most appropriate and efficient next steps in this litigation. They have done so, but to little avail. The University Defendants would file and brief a motion to dismiss in the ordinary course and treat the preliminary-injunction request as moot or futile given the TRO ruling. Defense Status Report (DN 16) at 1. Woodcock seeks accelerated discovery with a view toward a preliminary-injunction hearing before the start of fall classes and the typical faculty hiring period, "on or before August 24." DN 18-1 at 15–19.

Woodcock is right that his preliminary-injunction request hasn't already been resolved. But he is wrong that it's likely to succeed—with or without expedited discovery. The nature and utility of any targeted discovery, moreover, or its necessity in advance of the Defendants' motion to dismiss, for that matter, are hardly clear.

"District courts have discretion to order expedited discovery when the moving party shows good cause." *J.P. Morgan Sec. LLC v. Logsdon*, No. 3:22-cv-14-BJB, 2022 WL 509120, at *1 (W.D. Ky. Feb. 18, 2022) (quotation marks omitted). And good cause may exist "where the plaintiff's need for expedited discovery outweighs the possible prejudice or hardship to the defendant." *Id.* (quoting *USEC Inc. v. Everitt*, No. 3:09-cv-4, 2009 WL 152479, at *3 (E.D. Tenn. Jan. 22, 2009)).

But Woodcock still hasn't shown why discovery is "necessary for a preliminary injunction." *Id.* (quotation marks omitted). And the burden is on him, as the party seeking emergency judicial intervention, *see 5ifth Element Creative, LLC v. Kirsch*, No. 5:10-cv-255, 2010 WL 4102907, at *2 (E.D. Ky. Oct. 18, 2010), to justify his request "to obtain documents from all defendants and their associates relating to the decision to hire Van Tatenhove," DN 18-1 at 15. In effect, Woodcock seeks full discovery on a fundamentally backward-looking claim that the University wrongly hired Van Tatenhove in the first place. That perspective appears to bear little relationship to Woodcock's request for a forward-looking injunction that prevents "ongoing irreparable harm caused by the defendants' dilution of the message

2

Woodcock seeks to send through his ongoing association with the law faculty."  DN 13 at 3.

Ordinarily, federal civil procedure subjects complaints to adversarial testing *before* imposing the burdens of discovery on a defendant.  That is why defendants may move to dismiss under Rule 12(b)(6) in lieu of an answer that shunts the case into discovery: subjecting defendants to discovery would be unjust if the plaintiff failed to state a claim.  Extraordinary emergencies, to be sure, might warrant reversing this orderly procedure.  But Woodcock hasn't shown any exigency that warrants upending orderly process here.  And granting expedited discovery before accepting a responsive pleading would be especially inappropriate given four serious problems that litigation has already revealed in Woodcock's complaint.

*First*, that the law-school faculty is a group whose expressive rights regarding scholarship may effectively supersede the University's authority to install a dean of its, rather than the faculty's, choosing.  *See, e.g.*, *Blick v. Ann Arbor Public School District*, 105 F.4th 868, 882 (6th Cir. 2024) (expressing skepticism that "an informal and ad hoc group," as opposed to a "formal entit[y]," qualifies "as an expressive association entitled to First Amendment protection") (quotation marks omitted).  *See also Forum for Academic & Institutional Rights v. Rumsfeld*, 390 F.3d 219, 231 (3d Cir. 2004) (recognizing at least private "law schools" and "educational institutions" as "expressive associations") (reversed and remanded on other grounds).

*Second*, that Woodcock may assert any such rights on behalf of the faculty.  Most cases alleging a violation of a group's expressive association arise through a lawsuit filed by and in the name of a particular group.  *See, e.g.*, *Boy Scouts of America v. Dale*, 530 U.S. 640, 650 (2000) (associational action to protect the Boy Scouts' "expressive activity" brought by the group itself and in the group's name); FED. R. CIV. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.").  The right to do so is not obvious when a lawsuit emerges through the action of "a lone wolf."  *Ames v. LaRose,* 86 F.4th 729, 733 (6th Cir. 2023) (distinguishing *San Francisco County Democratic Central Committee v. Eu*, 826 F.2d 814 (9th Cir. 1987), and rejecting standing on behalf of a party-member plaintiff).

*Third*, that an implied message regarding peer review—used in the sense of administrative supervision rather than scholarly review and publication—is one subject to First Amendment protection.  Woodcock has not cited any precedent to that effect.  Nor has he identified any actual limit on what the faculty may say or write to express its intended message regarding a commitment to peer review, as distinct from a desire to select its own leader in place of the Government's choice.  *See, e.g.*, *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 69 (2006) (plaintiff could not establish violation "simply by asserting that mere association would impair its message") (quotation marks omitted); Supp. Br. at 3 ("If an

3

association cannot pick its leader, then the association's members, who use the association to speak, lose control over the messages that the association sends."). *See also Peer Review*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025) ("a process by which something proposed (as for research or publication) is evaluated by a group of experts in the appropriate field").[†]

*Fourth*, that the University's appointment distorts or compels any such message expressed by the faculty. *See, e.g., Lichtenstein v. Hargett*, 83 F.4th 575, 602 (6th Cir. 2023) (freedom-of-association claim requires a showing that state action "significantly burden[s]" a group's "ability to express its message"); *Blick*, 105 F.4th at 883 ("significant burdens typically involve" either "coercive power to regulate the group" or "deny[ing] public benefits to the group") (quotation marks omitted). On the facts as currently presented, it remains unclear whether or how the appointment "bars them from associating with anyone," *Lichtenstein*, 83 F.4th at 603, or interferes with their "choice not to propound a point of view contrary to its beliefs," *Dale*, 530 U.S. at 654. Nor is it clear whether or how Woodcock's membership in the law faculty is a "mandatory association" such that "a reasonable observer would impute some meaning to membership in the organization and the plaintiff objects to that meaning." *Crowe v. Oregon State Bar*, 112 F.4th 1218, 1233–35 (9th Cir. 2024).

### ORDER

Because Woodcock has failed to carry his burden, the Court denies his motion for expedited discovery and denies, without prejudice, his request for an expedited preliminary injunction hearing. *See* DNs 2, 9 & 13. Given the need for prompt resolution, however, the Court orders the University Defendants to file a motion to dismiss or responsive pleading no later than August 4, 2026, consistent with their status report. DN 16 at 1. Woodcock must file his opposition to the anticipated motion no later than August 11th. And the Defendants may file a reply no later than Friday, August 14th. The Court anticipates holding a hearing or issuing a written ruling promptly thereafter. Finally, the Court grants Woodcock's motion for leave to file a supplemental brief (DN 18), which has been considered in issuing this decision.

Benjamin Beaton, District Judge
United States District Court

July 31, 2026

---

[†] As used by Woodcock, however, peer review has a different meaning: that the faculty of a particular academic unit, such as the faculty of a law school, decide the appointment, promotion, and retention of faculty based on a review of their scholarship. *See* Complaint ¶ 1.